UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SEAN HUBKEY,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 18-cv-02280-JCS<br><br>**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 23 |

## I. INTRODUCTION

Plaintiff Michael Sean Hubkey brought this action challenging the decision by Defendant the Commissioner of Social Security (the "Commissioner") denying Hubkey's applications for disability benefits and supplemental security income. The parties filed cross motions for summary judgment. For the reasons discussed below, Hubkey's motion is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this order.[1]

## II. BACKGROUND

### A. Hubkey's Medical History and Applications for Benefits

Hubkey, who was born in 1966 and did not complete high school, has a work history including construction, garbage collection, and industrial truck driving. Hubkey experiences lumbar back pain, and tests including x-rays and magnetic resonance imaging ("MRIs") conducted since 2012 have shown some degree of degenerative spinal changes. Hubkey has at times experienced neuropathy, including numbness and tingling. A clinical examination in 2016

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

"reveal[ed] bilateral Tinal's sign suggest[ive] of bilateral carpal tunnel syndrome." Admin. Record ("AR," dkt. 15) at 452. Hubkey has also experienced some degree of depression, likely related to his physical impairments, but psychological examinations generally found little if any psychological impairment, and Hubkey's primary physician Dr. John Schweifler reported in 2015 that Hubkey had no limitations as a result of psychological factors. *See id.* at 403–05.

The medical evidence primarily at issue in Hubkey's judicial appeal of the Commissioner's adverse decision consist of Dr. Schweifler's 2014 opinions, which an administrative law judge (the "ALJ") afforded little weight, a questionnaire completed by Dr. Schweifler in 2015 that the ALJ failed to address, and a consultative examination by Dr. Robert Tang assessing limitations that the ALJ acknowledged but provided no explanation for failing to credit.

Dr. Schweifler's October 20, 2014 residual functional capacity questionnaire indicated that Hubkey experienced pain as a result of sciatica and radial neuropathy, as well as fatigue as a side effect of medication. *Id.* at 393. According to Dr. Schweifler, Hubkey's symptoms would frequently interfere with his ability to concentrate on simple tasks, he would need to lie down more than would be permitted by typical breaks, and he could walk only one block without rest or significant pain. *Id.* Dr. Schweifler reported that Hubkey could sit for twenty minutes at a time and two hours in a typical workday, and that he could stand for fifteen minutes at a time and two hours in a workday. *Id.* Hubkey would need to be allowed to take unscheduled breaks of fifteen to thirty minutes and shift between sitting, standing, or walking at will. *Id.* Dr. Schweifler reported that Hubkey could not lift more than ten pounds and could only lift less than ten pounds "occasionally," and that he could only spend fifteen percent of a workday handling, fingering, or reaching, with either hand. *Id.* at 394. Dr. Schweifler also reported that Hubkey would need to miss work more than four times per month and was not physically capable of sustained full-time work. *Id.* In an accompanying mental capacity assessment, Dr. Schweifler assessed slight to moderate limitations. *Id.* at 390–92.

Dr. Schweifler's January 13, 2015 residual functional capacity questionnaire reports similar physical limitations. *See id.* at 401–02. In the areas where it differs from the 2014

questionnaire, that report indicates that Hubkey's symptoms would "constantly" interfere with his ability to concentrate on work, that he could walk one to two blocks, that he would need unscheduled ten-minute breaks each hour, and that he could spend up twenty percent of a workday handling, fingering, or reaching. *Id.* Dr. Schweifler's accompanying 2015 mental capacity assessment reported no limitations as a result of psychological factors. *Id.* at 403–05.

Dr. Tang examined Hubkey on July 20, 2014 and generally found his symptoms to be relatively mild in a number of areas. *Id.* at 333–36. Dr. Tang noted that Hubkey had a "[g]ood range of motion lumbar as well as hips" and "5/5" strength. *Id.* at 336. Dr. Tang assessed less restrictive limitations than Dr. Schweifler, including no limitation on sitting on or on manipulative activities. *Id.* Hubkey's motion focuses on Dr. Tang's conclusion that, "[w]ith alternating sitting and standing and maximum allowable breaks, maximum standing and walking is up to six hours." *See id.*

Hubkey applied for supplemental security income on April 21, 2014 and for disability insurance benefits on May 14, 2014. AR at 18 (ALJ's decision summarizing Hubkey's application). With respect to his disability benefits, Hubkey qualifies for coverage only through September 20, 2016, and therefore must establish an onset of disability before that date. *Id.* Hubkey alleges an onset date of February 1, 2014. *Id.*

**B.    The ALJ's Decision**

The ALJ determined that Hubkey had not engaged in substantial gainful activity since his alleged onset date, and acknowledged that his degenerative disc disease and neuropathy were severe impairments. *Id.* at 20. The ALJ determined that Hubkey's depression, although medically determinable, was not a "severe impairment" because it did "not cause more than minimal limitation in [his] ability to perform basic mental work activities," and specifically caused "no" limitation in any of the functional areas specified in the "paragraph B" criteria of the listings of mental impairments. *Id.* at 20–21. The ALJ also found Hubkey's hypertension and obesity to be non-severe, and determined that his use of marijuana and alcohol was "not a contributing factor to the determination of disability." *Id.* at 21–22.

According to the ALJ, Hubkey did not meet his burden of proof at the third step of the

3

ALJ's five-step analysis to show that any impairment met or equaled the severity of a listing. *Id.* at 22. The ALJ briefly considered whether Hubkey satisfied listing 1.04, for spinal disorders, but concluded that he did not meet that listing because he could walk effectively and because there was no objective "evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis." *Id.* at 22–23. Hubkey does not challenge that determination. *See generally* Hubkey Mot. (dkt. 16).

The ALJ assessed the following restrictions in Hubkey's residual functional capacity ("RFC"):

> [Hubkey has the] capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; frequently balance, stoop, kneel or crouch; occasionally crawl; frequently handle and finger bilaterally.

*Id.* at 23. In reaching that conclusion, the ALJ gave little weight to Hubkey's treating physician Dr. Schweifler's October 20, 2014 physician medical source statement and mental capacity assessment, and to a November 10, 2014 letter by Dr. Schweifler assessing similar restrictions. *Id.* at 24–25. The ALJ did not address Dr. Schweifler's January 13, 2015 questionnaire, which was generally consistent with but in some ways slightly more restrictive than his 2014 opinions, *see id.* at 400–02, or his January 13, 2015 mental capacity assessment, which reported no psychological limitation, *see id.* at 403–05.

Instead, the ALJ gave great weight to consultative examining physician Dr. Tang, and to consultative non-examining physician Dr. R. Lockmiller, although the ALJ assessed greater restrictions on manipulation than both of those doctors to account for Hubkey's "positive Tinel's sign" (which is evidence of carpal tunnel syndrome), and greater restrictions on climbing, balancing, and stooping than Dr. Tang to account for Hubkey's neuropathy and degenerative disc disease. *Id.* at 25–26. Although the ALJ noted Dr. Tang's conclusion that Hubkey required "alternating sitting and standing and maximum allowable breaks" in order to be able to stand and walk for six hours, the ALJ omitted that restriction from Hubkey's RFC without explanation. *See id.* at 23, 26. The ALJ afforded only "partial weight" to another non-examining consultant who assessed less severe restrictions, Dr. H. M. Estrin, because the ALJ determined that Dr. Estrin

4

failed to account sufficiently for Hubkey's degenerative disc disease and neuropathy. *Id.* at 26–27.

Explaining her conclusion that Hubkey was not as restricted as his own testimony and Dr. Schweifler's conclusions would indicate, the ALJ noted that Hubkey's activities of daily living included caring for three dogs, driving a car, dressing and bathing himself, washing laundry and dishes, taking public transportation, preparing his own meals, socializing with friends, watching television, and attending doctors' appointments. *Id.* at 27. The ALJ also noted that Hubkey reported a "sawing accident" in 2016, and concluded that "[p]erforming an activity such as sawing wood is inconsistent with [his] allegations." *Id.* The ALJ stated that Hubkey's symptoms improved with treatment, citing an April 2016 medical record from Dr. Schweifler indicating that Hubkey had achieved 80% relief from his neuropathy as a result of medication. *Id.* (citing *id.* at 410). The ALJ noted Hubkey's "5/5" strength at his examination with Dr. Tang, his lack of need for an assistive device, and his failure to try physical therapy or injections, concluding that Hubkey's treatment was "relatively conservative" and that his "pain management medication is not at the level one would expect if his allegations were true." *Id.* The ALJ also noted that Hubkey stopped working due to the seasonal nature of his work rather than due to disability, and that he testified he looked for work and would have accepted a full time job if he had found one. *Id.*

The ALJ accepted the vocational expert's testimony that Hubkey could not perform his past relevant work. *Id.* at 28. Based on the vocational expert's testimony that someone with the RFC presented by the ALJ could work in positions including "cleaner housekeeping," "Mexican food maker, hand," and "sales attendant," however, the ALJ determined that Hubkey was not disabled because he could perform other work available in the national economy. *Id.* at 28–29; *see also id.* at 68–69 (vocational expert's testimony).

### C. The Parties' Arguments

Hubkey contends that the ALJ erred in crediting non-treating doctors' opinions over those of his primary treating physician Dr. Schweifler, Hubkey Mot. at 14–20, in failing to address Dr. Schweifler's January 2015 questionnaire, *id.* at 21–2, and in failing to include all limitations

5

assessed by Dr. Tang in the RFC presented to the vocational expert, *id.* at 22–23. Hubkey seeks only remand for further administrative proceedings; he does not argue that any opinion should be credited as true by the Court or that the case should be remanded with instructions to award benefits. *See id.* at 24.

The Commissioner argues that the ALJ's decision should be affirmed. *See generally* Comm'r's Mot. (dkt. 23). According to the Commissioner, Dr. Schweifler's conclusions conflict with those of other treating, examining, and consulting doctors with respect to issues including Hubkey's strength, pain, and range of motion. *Id.* at 4–6. The Commissioner contends that the ALJ's failure to address Dr. Schweifler's 2015 questionnaire was harmless because the questionnaire included essentially the same opinions that Dr. Schweifler provided in 2014 and that the ALJ expressly rejected. *Id.* at 7. The Commissioner also argues that the ALJ was not required to credit all of the restrictions assessed by Dr. Tang, particularly where the non-examining consultants did not identify the same restrictions. *Id.* at 7–9. The Commissioner notes that Hubkey's motion does not challenge the ALJ's conclusion that Hubkey's own testimony was not fully credible. *Id.* at 5–6.

In his reply, Hubkey contends that Dr. Schweifler's 2015 opinions are supported by MRI results and treatment notes, and that, if properly credited, such opinions would disqualify Hubkey from the job descriptions identified by the vocational expert because Hubkey is not capable of the degree of reaching, handling, and fingering required by those positions. Reply (dkt. 24) at 2–3. Hubkey also argues that the ALJ's authority to weigh conflicting medical evidence does not excuse the ALJ's failure to give any reason for rejecting certain restrictions assessed by Dr. Tang. *Id.* at 3–4.

### III. ANALYSIS

#### A. Legal Standard Under 42 U.S.C. §§ 405(g) and 1383(c)(3)

District courts have jurisdiction to review the final decisions of the Commissioner and have the power to affirm, modify, or reverse the Commissioner's decisions, with or without remanding for further hearings. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).

When asked to review the Commissioner's decision, the Court takes as conclusive any

findings of the Commissioner which are free from legal error and supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be based on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "'Substantial evidence' means more than a mere scintilla," *id.*, but "less than a preponderance." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1978)). In reviewing the record, the Court must consider both the evidence that supports and detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

If the Court identifies defects in the administrative proceeding or the ALJ's conclusions, the Court may remand for further proceedings or for a calculation of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1019–21 (9th Cir. 2014).

### B. The ALJ Erred in Failing to Include All Limitations Assessed by Dr. Tang in Hubkey's Residual Functional Capacity

Dr. Tang, a physician who examined Hubkey in 2014 for the purpose of his application for benefits, concluded that "[w]ith alternating sitting and standing and maximum allowable breaks, maximum standing and walking is six hours." AR at 336. The conclusion that Hubkey would require breaks and the ability to alternate between standing and walking is consistent with Hubkey's treating physician Dr. Schweifler's assessments in 2014 and 2015. *See id.* at 393 (checking boxes indicating that Hubkey would "need a job which permits shifting positions at will from sitting, standing or walking" and would "need to take unscheduled breaks during an 8-hour workday"); *id.* at 401 (same). Although the ALJ acknowledged this opinion from Dr. Tang and generally afforded his opinions "great weight," *id.* at 26, she did not include in her own RFC assessment any limitation on Hubkey's ability to stand and walk or any requirement that he be permitted to take breaks or alternate between sitting and standing, *see id.* at 23.

7

The Commissioner's only arguments in support of that omission are that an ALJ "is not required to accept each and every limitation afforded by [a] doctor," that the non-examining consultant Dr. Lockmiller did not assess similar restrictions, and that the ALJ "is the final arbiter with respect to assessing a RFC and evaluating contradictory medical opinions." Comm'r's Mot. at 8–9.

While the Commissioner is correct that the ALJ is tasked with evaluating contradictory evidence, the ALJ must do so within the framework established by statute, regulation, and case law. "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "[T]he opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.[2]

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citations omitted). "[T]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id.* at 1202 (quoting *Lester*, 81 F.3d at 831). The Ninth Circuit has emphasized the high standard required for an ALJ to reject an opinion from a treating or examining doctor, even where the record includes a contradictory medical opinion:

> "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* This is so because, even when contradicted, a treating or examining

---

[2] The regulations governing treatment of medical evidence have been amended with respect to applications filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c. Because Hubkey filed his application before that date, the older framework applies here, and this order need not consider what effect the regulatory change has on Ninth Circuit precedent regarding the weight afforded to different categories of medical opinions.

8

> physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick* [*v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)]. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).
>
> Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In other words, an ALJ errs when he rejects a medical opinion or assigns it very little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. *See id.*

*Garrison*, 759 F.3d at 1012–13.

Applying that standard, even if the ALJ had identified the non-examining consultants' contrary conclusions as a reason to depart from Dr. Tang's opinion that Hubkey would require breaks and the ability to alternate between sitting and standing in order to stand and walk for much of a workday, that discrepancy would not in itself be sufficient to reject Dr. Tang's conclusion as an examining physician. Regardless, the Commissioner is undoubtedly well aware that the Court is "constrained to review the reasons the ALJ asserts" for denying benefits. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The ALJ asserted no reason for rejecting this opinion from Dr. Tang.

The Commissioner's decision to oppose remanding the case to allow an ALJ to properly consider Dr. Tang's opinion is difficult to fathom. Hubkey's motion is GRANTED as to this issue.

### C. The ALJ Erred in Failing to Address Dr. Schweifler's January 2015 Opinion

The Ninth Circuit has held that an ALJ errs in failing to specifically address the opinion of a doctor who examined or treated the claimant:

> In order to reject an examining physician's opinion, "the ALJ has to give clear and convincing reasons. . . . Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r. of Soc. Sec. Admin.*,

9

> 166 F.3d 1294, 1298–99 (9th Cir. 1999).
>
> Here, the ALJ failed to provide Dr. Johnson's statement any degree of review at all, and gave no reasons for doing so, let alone any clear and convincing reasons. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (Although the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for doing so." (internal quotation marks omitted)).
>
> The Commissioner concedes that the ALJ's decision does not address Dr. Johnson's opinion that Hill's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely." Nevertheless, the Commissioner argues that the ALJ's failure to consider Dr. Johnson's opinion was harmless because an opinion that an individual cannot work is an opinion on an issue reserved to the Commissioner and, therefore, it is not binding. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). We disagree.
>
> Dr. Johnson's statement that Hill would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's likelihood of being able to sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions. Thus, the ALJ's disregard for Dr. Johnson's medical opinion was not harmless error and Dr. Johnson's opinion should have been considered. See 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

*Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015) ("Because a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them.").

Here, the Commissioner acknowledges that the ALJ failed to address Dr. Schweifler's 2015 questionnaire. Comm'r's Mot. at 7. The Commissioner argues only that "any omission is harmless at best" because the opinions stated in that questionnaire are "essentially the same as [Dr. Schweifler's] other 2014 opinion that the ALJ rejected," and "the same reasons apply" to reject it. *Id.* This Court, applying *Hill*, has rejected similar arguments advanced by the Commissioner in another case. *See Rayford v. Colvin*, No. 13-cv-05839-JCS, 2015 WL 1534119, at *5 (N.D. Cal. Apr. 1, 2015) ("The Commissioner has cited no authority that would permit the Court to repurpose the ALJ's reasons for rejecting some evidence—here, the conclusions of Drs. Kalich and

Sackrin—to discredit additional evidence that the ALJ failed to address in any way—i.e., the reports of Drs. Aulakh and Loomis.").

Although this case differs from *Hill* and *Rayford* in that the opinion the ALJ failed to address was offered by the same doctor whose other opinions the ALJ in fact addressed and rejected, the Court is not persuaded that such a difference affects the outcome. The consistency of a treating physician's opinions throughout the record can be relevant to the weight afforded to such opinions. *See, e.g.*, *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (noting that the credit-as-true rule was applied correctly in another case where the "administrative record . . . was extensive and without inconsistencies in the claimant's primary physician's medical opinions."). It is not clear from the ALJ's decision whether she was aware of Dr. Schweifler's 2015 opinions, nor is it clear whether those opinions would have affected the ALJ's conclusions had she considered them.

The Commissioner correctly cites a Ninth Circuit decision holding that "the relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error[;] . . . it is whether the ALJ's decision remains legally valid, despite such error." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); Comm'r's Mot. at 7.[3] In *Carmickle*, however, an ALJ offered multiple reasons to discount a claimant's credibility, only some of which were legally valid. *See* 533 F.3d at 1161–63. The Ninth Circuit held that because the valid reasons would have been sufficient if offered alone, the ALJ's credibility finding would not be disturbed. *Id.* at 1163. In this case, the ALJ did not offer any reason to reject Dr. Schweifler's 2015 opinions, and her failure to consider them was legally erroneous. *See Hill*, 698 F.3d at 1159–60. Whether there might be sufficient reasons to reject those opinions should be addressed in the first instance through the administrative process on remand.

### D. Whether the ALJ Erred in Affording Little Weight to Dr. Schweifler

Because the ALJ's failure to provide any reason to reject Dr. Tang's opinion regarding sitting, standing, and breaks or to reject Dr. Schweifler's 2015 questionnaire constitute relatively

---

[3] The Commissioner slightly misquotes *Carmickle* by omitting an internal citation without ellipsis or other indication, but the error is not material.

11

clear errors requiring remand for further administrative proceedings, and appropriate consideration of those opinions may affect the ALJ's view of the record as a whole, the Court declines to delve deeply into whether the ALJ provided sufficient reasons to reject the opinions from Dr. Schweifler that she in fact addressed. The Commissioner is correct that there appear to be at least some conflicts between Dr. Schweifler's conclusions and other doctors' treatment records, including with respect to Hubkey's strength and range of motion.

The Court notes, however, that the ALJ provided little explanation as to why non-treating physicians Drs. Tang and Lockmiller should be afforded greater weight than Dr. Schweifler despite the ALJ's own recognition that both Drs. Tang and Lockmiller failed to account sufficiently for Hubkey's positive Tinel test (indicating carpal tunnel syndrome) and neuropathy, and that Dr. Tang failed to account sufficiently for Hubkey's degenerative disc disease. *See* AR at 26. The ALJ did not explain in any detail how she determined that the appropriate manipulative limitation was "frequent" handling and fingering, contradicting Dr. Schweifler's conclusions that Hubkey was limited to engaging in such activities for only fifteen or twenty percent of the workday. *Compare id.* at 23 (ALJ's RFC) *with id.* at 394, 402 (Dr. Schweifler's questionnaires). The lack of indication that any doctor who sufficiently considered Hubkey's neuropathy or Tinel's test result believed "frequent" handling and fingering to be an appropriate limitation raises questions as to whether the ALJ improperly "ma[de] [her] own independent medical findings" unsupported by professional medical opinions in the record. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

The Court also notes that in discounting Dr. Schweifler's opinions, the ALJ faulted Hubkey for his failure to obtain more comprehensive treatment such as physical therapy, without considering whether Hubkey had financial access to such treatment, and without addressing evidence in the record suggesting that he lacked such access.

If the Commissioner determines again on remand that Hubkey is not disabled, any such decision should include a more thorough explanation of why a particular RFC less restrictive than that assessed by Dr. Schweifler is warranted.

## IV. CONCLUSION

For the reasons discussed above, Hubkey's motion is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED for further administrative proceedings consistent with this decision. The Clerk is instructed to enter judgment in favor of Hubkey and to close the file.

**IT IS SO ORDERED.**

Dated: September 30, 2019

JOSEPH C. SPERO
Chief Magistrate Judge